The first case is Salanese International Corporation v. ITC, docket number 22-1827. Counselor Maynard, let me make sure that I'm correct, you have reserved three minutes of your time for rebuttal. Yes, Your Honor. Thank you. And understand that the other side has, we have two arguments, one by Mr. Richards and then by Ms. Saharsky, eight minutes and seven minutes, correct, you're splitting your time that way? That's correct, Your Honor. Okay. All right, Counselor, you may proceed. Thank you, Your Honor. May it please the Court, Deanne Maynard on behalf of Appellant Salanese, the ALJ held that under the America Invents Act, the sale of a product made by a secret process places the process on sale such that it can invalidate a later filed patent on the process under the on-sale bar. That conclusion cannot be split with the AIA's text, and this Court need go no further, so I'd like to start there. Don't we have a case that's fairly dispositive on this point, and that's Helson? No, Your Honor. So Helson addressed a different question, and the Supreme Court there was addressing the meaning of the words on sale and whether or not the on-sale bar in the AIA captured sales that were made under an agreement of confidentiality. That's not the question here, and the Court there didn't decide this question. This is a different question. The facts are different, but the legal issue is pretty much the same, wouldn't you say? No, Your Honor. It's different because the question here is whether – the question issue here was not in dispute in Helson. So in Helson, everybody agreed that the claimed invention itself was on sale. So that question was not before the Supreme Court. The question here is, what is the meaning of claimed invention in the AIA's on-sale bar provision? The claimed invention itself must be on sale, and the claimed invention here is a process. The AIA added a definition for the claimed invention, and the claimed invention under 100J – Are you contending that the meaning of the words on sale are not also applicable to this case? Well, so the question in Helson, and what Helson reiterated was to be on sale, the claimed invention must be the subject of a sale and must be ready for patenting. So the question here is whether the claimed invention itself was on sale. And the answer there – the answer is no, because the subject matter of the claimed invention here is a process, and the process was never on sale. Only the product made by the process was on sale, and the AIA confirms that Congress knows how to capture that conduct if it wants to. In the prior user defense in 273, Congress provided a defense. Can a secretive process be infringed? So can a secretive process be infringed? There are ways in which you could put a process on sale, if that's the question you're asking, Your Honor. So like in ScalTech – No, no, you're arguing that what's claimed here is a process. That's right. Can that claim be infringed? A secretive process – Could a claimed process be infringed? So you couldn't infringe it under 271A by selling the product of the invention. This Court's made that clear. In fact, to capture that conduct – So your answer is no? So you would not be infringing the claim on a process under 271A, Judge Reyna, if all you did was sell the product of the process. This Court's case law is long on that. And in fact, Congress passed a separate provision, 271G, to capture that very conduct. Congress says that a process patent is infringed under 271G if a product which is made by a process and patent is sold. And that's significant here and makes clear that the on-sale bar does not cover that conduct because both 273 and 271G make crystal clear that Congress knows how to use words. We have a long line of cases that talk about when a process would be on sale and how do you address those cases here. So I think those cases are not applicable to the meaning of the America Invents Act, Your Honor, which is an overhaul of the statute. And the question this Court asks is, what does the language of the America Invents Act say? And if the language of the America Invents Act is clear, then the Court needs to go no farther. But I think it's significant that D.L. Auld, which was the case that first applied the on-sale bar in circumstances similar to here, doesn't say the text requires that holding. It was the policies that the Court perceived to be animating the text under the old on-sale bar that led to that holding. And that's not a textual reading. That's not how we read statutes. The Court has to apply the text of this statute. And in any event, to the extent that Your Honor is kind of getting at, well, wasn't there a well-settled meaning? And should the Court deem that to be reenacted akin to the way that Helson addressed the question there? And the answer is no, for three reasons. One, the reenactment canon doesn't apply when the text is clear. And here, the text is clear on the question before the Court, which is what has to be on sale? The claimed invention. The process is not on sale. End of story. Two, the reenactment canon doesn't apply when there's no well-settled interpretation. I think it's doubtful that the Supreme Court would consider a few courts of appeals cases to be a well-settled interpretation. In the Supreme Court's decision in BP, they say a smattering of courts of appeals cases doesn't make something well-settled. And that the Supreme Court in the reenactment context doesn't feel itself to be bound to follow courts of appeals decisions that are counter to the text. But laying that aside, even if this Court's precedent could theoretically make a well-settled interpretation, it can't here because this Court had adopted two different meanings of the on-sale bar in this situation. One for patentees and one for non-patentees. So there was no well-settled meaning. And to the extent one of those interpretations is consistent with the text, Your Honor, it's the one in W.L. Gore, where the Court said, if Buds sold anything, Buds sold tape. Not the process. Under your interpretation, when would a process be considered on sale? So I think there are two potential situations that you can glean from this Court's cases that, like in the case Scaltech, where what had been contracted for was to buy the process itself. The cleaning of the sludge, essentially. And also in Minton, where it was the sale of a machine whose sole purpose was to practice the process. So if you sold a machine that embodied the process. But that's not what's going on here. This is just Sweden. Those sales were confidential in Hilson, correct? The sale, no, this Court held that the sale was actually public, Your Honor, that they put it in their 10-Ks and things, but they had not disclosed the details of the invention. But the point here is not whether or not, the point really here is not the question of what on-sale means. The question is, what needs to be on sale? And the language makes clear that it has to be the subject matter of the patent that's on sale. Wasn't the pre-AIA-102B the template for 102A1's on-sale bar? And I know that you were pointing out some distinctions that you were seeing between 102A1 and pre-AIA-102B, but is invention really meant to be something different than claim invention in the pre versus post-AIA on-sale bar? So I grant you that this Court read invention largely to mean claimed invention. But the problem for the Congress is, if you want to say, no, no, we really mean it has to be the invention. How do you fix an atextual reading when you reenact a statute? This is the way you fix it. You say, no, no, we really mean claimed invention, and you add a definition that says the claimed invention is the subject matter of the patent. So Congress doubled down on its reading of the language. And again, the case law in this Court can't settle the question, because this Court gave two different meanings to the text, only one of which was based on the actual text. And so if Your Honor thinks that you want to look at this Court's case law to inform what Congress could have meant, it's the W.L. Gore line of cases, the W.L. Gore holding, where if Bud sold anything, he just sold tape. He didn't sell the process. That's comparable to what Selanese is doing here. Selanese is only selling sweetener. So there are other parts of the—and I think another thing, too, Your Honor, is to note that there aren't that many cases where this Court has actually held in a holding, even under pre-AIA, that these specific facts fall under the bar. One is D.L. Auld, and in D.L. Auld, the Court was really clear that it wasn't saying it actually was a sale of the process. The Court just said it's the principles animating the on-sale bar. So the Court made no pretense, really, about it being a textual interpretation. And so one can't think that by Congress, by reenacting, even if you think it's not a significant change, that by reenacting even the same language, that that was an adoption of that illiteral interpretation of the statute. Why wouldn't the public sale of the products that are made using a secretive process, why wouldn't that be a disclosure under Section 102B? Be a disclosure under the new 102B? So the public sale of a secret process? Yes. Because it doesn't disclose the patented invention to anyone. So that's unlike Helsin, where the sale was, you know, when the sale was public, but two, the invention had been disclosed to the buyer there. Nobody disputed that. The sales of the product is public. Yes, the sales of the product in Helsin are here. No, I mean here in Newtown. Yeah, here, but just the sweetener, Your Honor. The process itself has been disclosed to no one, which is distinct from Skaltech, where the process had been disclosed to the buyer, which is distinct from Minton, where if the process is sold. The sales of the products using that process is public. Yes. Why isn't that a public disclosure under Section 102B? A public, so are you talking about the defense or a public use, like under 102A? Well, let's say public use. Well, it's not a public use because this court has held that keeping a process secretive is not a public use. It isn't known to anybody. One of our other arguments is that the other side's reading and the commission's reading can't be squared with the structure of the statute because the structure of the statute, and this may be what you're getting at, Judge Rina, the structure of the statute reinforces our reading because it provides like a one-year grace period for a patent applicant to make certain disclosures. But in this situation where you just sell a sweetener and it tells you nothing about the process made to produce the sweetener, it doesn't disclose the invention to anyone. And so it's telling that, and so our reading coheres with this statutory scheme because ours wouldn't be caught by the on-sale bar, and so we wouldn't need the one-year grace period. But under the other side's reading, there's an anomaly in the structure of the statute. And so it's telling that the ITC and Jena have two different ways to explain away. They don't agree how to explain away this problem, which I think is telling. How does the Woodland Trust case fit in here? So Woodland Trust was a different situation, Your Honor. It wasn't a sale of a... It didn't face this question, the sale of a product by a secret process. The question there was about the way to keep plants from freezing, if I recall correctly, and it had been in public use, and other people were publicly using the process. So that would be a different question. They haven't made a public use argument here, and everybody agrees that selling is... It also said on sale. It also said on sale. Yeah. But I think there... Public use or sale. I think there the process may... To the extent it did, Your Honor, I thought it was a public use case, but to the extent I'm wrong, it was distinct from the facts here, where the process is not known, the process is not on sale. There the process was publicly known. The facts of that case are not on fours with ours. And we're not saying there can't be sales of process patents. We're just saying of subject matter... Yes, Your Honor. Are you relying on legislative history to support your interpretation, and if so, what would be your best piece? So mostly we're just saying that the ITC, to the extent the commissioner, the ALJ, relied on legislative history, he misread it, that those senators did in fact... The senators that we are relying on the floor statements of, they did in fact support the ultimate passage. I think the purpose of this, as you know, this changed it to a first to file system, which does address many of the concerns that this court expressed with respect to this particular fact situation. But in any event, with the text is clear, the legislative history has no role to play. Doesn't your argument lead us to a point to where we begin to move away from the foundation for exclusivity, and I'm talking about the dedication to the public of something in return for that exclusivity. And here, if the process remains secretive, but yet you get to continue selling products made by that process, you have advantage of the exclusivity, but you haven't dedicated anything to the public. So actually, Your Honor, our reading does encourage people who are protecting their processes by trade secrets to patent them, and that's what we did here on our reading of the statute. This would be protected. If we wanted to keep it never dedicated to the public, we could have just kept it as a trade secret. But under our reading of the statute, it actually encourages parties to apply for a patent, disclose the patent, and have that for a limited time. Okay. You're into your rebuttal time. Thank you so much. Thank you. Counsel Richards, do you have eight minutes? Yes, sir. May it please the Court, the sole question for the commission below, and this Court now, is did Congress change what it means for a process to be on sale when it enacted the AIA? The answer to that question clearly has to be no, given the unanimous holding in Helsin that Congress did not alter the meaning of on sale when it enacted the AIA. Helsin has some points that could be argued, apply in this case, but there's other points in Helsin that could equally be argued, perhaps even more so, that Helsin doesn't apply in this case. Is it, is Helsin, how does it apply, and is it dispositive here? The commission's position is dispositive, Your Honor, and I'd like to explain a little bit more maybe by touching on the points we just heard to sort of flesh this out. I think sort of the main dispute I'm hearing is that the issue is, is it on sale or is it claimed invention? Which words are we looking at? The court should be looking at the words on sale. There is no dispute here about what the claimed invention was, it was the process. The commission held that the process was on sale. And the commission's holding in that regard is completely on all fours with this court's binding precedence. The commission had no other option. What I'd point you to specifically about that are two cases particularly. It's both- How do you square your argument that the process was on sale when the process is secret? So what this court has said, first in Kolar, and then again most recently in 2020 in BASF, is that the way you put a process on sale, it is acknowledged at least two ways. One is the ScalTech way, which I think I heard my friend acknowledge that Selenys will agree absolutely puts a process on sale. And the other way is by selling a product made with that process. One thing I wanted to call the court's attention to is when this court sat on Bank and Medicines, it explained that these were really two halves of the same coin. The quote specifically is, in DL-Alt, the patentee offered to sell a product made by the claimed method to prospective customers, i.e., it offered to practice the method in return for compensation. So in Medicines, the en banc court explained that it's not, as Selenys contends, two completely different forms of selling a process. They're two sides of the same coin. So to the extent that Selenys has acknowledged now that a ScalTech sale sells a process, under this court's reasoning in Medicines, that pretty much ends the case. Because the ScalTech type sale and the sale of a product made by the process really are the same thing. What is your response to the fact that the language changed from invention to claimed invention? Yeah. So what I'd like to point out about that, Your Honor, is, one, again, I think I heard my friend acknowledge this court had already been consistently applying the claimed invention definition. As far as what we can glean from what Congress intended, I've been through the legislative history. The only explanation I can find there at all comes from the House report from 2007. It acknowledges on page 55, and the citation here is House Rep 110-314. Page 55, it notes that these definitions were added, and it says, they were added to bring clarity and meaning and application of the terms in the context of a first-to-file system. The other thing, so there's nothing in there addressing this on-sale issue in processes. The suggestion that that was specifically put in there to address this issue just has no support that I'm aware of. To go a step further, though, 102A is not the only place that claimed invention shows up in the AIA. It also shows up in 103, the obviousness section. So to the extent that suggests that Congress introduced claimed invention to totally address this 102A problem, I think that undercuts that idea, because claimed invention is used elsewhere also. I wanted to touch briefly, I think, Judge Reyna, you asked a question about whether secret processes can be infringed under 271. To the extent I understood your question, the answer is yes. 271 is broad. It includes more than just on-sale as a means of triggering infringement. So to the extent, what Celanese is working towards is a mismatch between grounds of invalidity and grounds of infringement, I think that is where we're headed. Because these secret processes absolutely can be infringed, the patent holders can seek infringement damages for them. But this would absolutely, if Celanese's tact was taken, this would absolutely reduce the I know there was a question about 102B being the template. That is also the case we know from the same house report I mentioned before. That's house report 110-314, and that's page 57. It's about one paragraph you'll find there. And the house report is very clear. The point of adopting 102B and the language of on-sale there was because there were settled meanings to it. Where the court should sort of take that in the greater scheme of the arguments it's hearing is to the extent that Celanese has argued that the floor statements from three or four members of Congress sort of represent the whole sense of Congress here. That's just not the case. And this house report pretty much makes that point expressly. I want to point out, Celanese is not comparable to Budd and W.L. Gore. Budd and W.L. Gore was a third party. And I don't think this court needs to read W.L. Gore any further than what it said, which is the traditional rule that's memorialized in textbooks and treatises, which is that a non-patentee third party's use of a patented method to make a product that it then sales does not put the process on sale. That's not Celanese, because Celanese is the patentee here. Do you believe that Congress intended the 102B grace period to be coextensive with 102A1's prior art categories? I have to note, for the commission, this issue wasn't raised below. And I apologize, but I need to be careful not to suggest the commission decided something it didn't. What I can say is that, again, pointing to that same portion of, well, actually pointing to the floor statements from the senators that Celanese relies on, Senator Leahy said very clearly, we intend that if an inventor's actions are such as to constitute prior art under section 102A, then those actions necessarily trigger section 102B's protections for the inventor. He goes on to reemphasize the same thing. Section 102B1A, as written, was deliberately couched in... Can you tell me where you're reading from, precisely? Yes, this is 157 Congressional Record from the Senate, 1496. And there's two more statements, essentially, to the same effect there. The final point I wanted to make is I heard that the rule Celanese is advocating for would promote the dedication of inventions to the public. I would submit that, at least if we look at the amicus brief that was filed here, that's not the case. I think the National Association of Manufacturers briefs makes it very clear that what they are seeking is for this court to overturn the long-held rule that you have to choose between secrecy or exclusivity under a patent. Your Honors, unless you have more questions, I'll be happy to sit down. Thank you. Thank you, Your Honors. Counselor, you've got seven minutes. Good morning. I'm Nicole Saharsky for the Intervenors. I just would like to make three overarching points based on the discussion that's happened so far this morning. First of all, there is no dispute between the parties about the meaning of claimed invention. We all agree that the claimed invention is the process. And the question is, what does it mean for the process to be on sale? We understand that Congress, when it said claimed invention, did not have any change from what this court, what previously said invention in the statute and that this court interpreted as claimed invention. And you can look to this court's precedents, including, for example, the Phillips case that's cited in the Commission's brief that makes clear that the words, word invention in the old statute and claimed invention always meant the same thing. So second, that means the question here is, what does it mean for a process to be on sale? And this court has a long history, a long string of cases that were based also on the Supreme Court's case in Penick and on the Second Circuit's case in Metalizing. And those cases all explain how a process is on sale, that a process is on sale when a product made using that process is sold. And it's not just that the court's case has held this and kept repeating it. It's that they explained why this is true, that for a process patent, the court explained, for example, in Kolar, title doesn't pass the same way as it does with a physical object. And so the question is, how is the inventor commercializing the invention? How is the inventor benefiting from this invention? And the court has said that the process is on sale either when you perform the process for money or sell a product made using the process. And if you look at the patent in this case, I think it makes complete sense. This patent is for a process to make a product. So of course, when the product is on sale, that is giving the inventor the benefit of that invention, commercializing that invention. And so if we just look at this court's cases that have addressed this exact situation, we've got the D.L. Auld case, the Kolar case, the BASF case more recently, the Kaveny case that the commission relied upon. This is settled law in this circuit. It also includes the Woodland Trust case, which was mentioned earlier, that the Supreme the pre-existing decisions of this circuit that Congress understood to be the law and wanted to remain the law after the AIA. So really, we've got not only this court understanding that the situation here is a process on sale, but the U.S. Supreme Court citing the Woodland Trust case, citing the Metalizing case in the FAF decision, and having its own decision in Pennock, which was about a process. So Celaney's position really means overturning decades of this court's precedent and disregarding the Supreme Court's holding in Helsin about what it means to be on sale. Your friend on the other side argues extensively concerning the text that surrounds the AIA. Can you respond to that? Sure. So I think the primary argument that's made is about the words claimed invention. And so our position is that there's no dispute that that is the process and that that didn't change with the AIA. There are arguments made about Section 102A and 102B, where 102B is the grace period. And to answer the question that was asked, we understand those to be coextensive, that if something is listed in 102A and it's within the one-year grace period, it shall not be prior art. And I think you can tell that they're linked together because B says that it shall not be prior art under subsection A1. So B itself is linking the text to A1. Salonese also makes arguments based on Sections 271 and 273. I would just note that those aren't changes that were made with the AIA. That's language that existed before the AIA. And so they're coming to this court saying that the AIA is a reason to revisit this court's prior precedent, but those aren't changes that are new with the AIA. So I think those are the main textual arguments that they are making. And I guess the third overriding point I wanted to make is that Salonese is doing exactly what the on-sale bar was intended to prevent, which is keeping something secret, the inventor making money off of it, commercializing it, waiting to seek a patent in order to extend the monopoly. I think the NAM amicus brief is unabashed that that's the rule that they want, and Salonese does not dispute that that's what they're doing here. And so where I think this leaves us is you've got a position from Salonese that is contrary to Helsin, contrary to this court's precedents. You'd have to overturn decades of this court's precedents that are not just the holdings, but an explanation of why there is this rule about how a process is on sale. I also think Salonese's position would leave a gaping hole in the on-sale bar, because how would a process be on sale? I mean, if you look at all the courts, all the cases that this court has, there's the one case that's about performing the process for money, but all the other cases are about And so I think it would make the on-sale bar almost meaningless in the context of process inventions. And again, you'd be allowing Salonese to do exactly what the on-sale bar was designed to prevent. So I'm happy to answer any further questions that the court might have. Yes, I have a few questions. Sure. How do you respond to opposing counsel's argument that Helsin is distinguishable here? Well, I think there are two arguments that they make. One is that they say Helsin doesn't address claimed invention. And that's true. But claimed invention is not a disputed term between the parties. We all agree that it's the process. And the definition of invention that this court had before the AIA is the same as the definition of claimed invention in the AIA. And there's no reason to believe that Congress intended a change there. I mean, the Supreme Court in Helsin said that adding otherwise available to the public was too obscure to change the on-sale bar. So I would submit that claimed invention would be way too obscure to change the on-sale bar. And then I think their second argument is that the facts of this case are not the same as the facts of Helsin. And that's true. They're different facts. But I would say two things in response to that. First, the reasoning of Helsin, the question that was answered is, did Congress change the meaning of on-sale? Or did it continue to embrace this court's prior precedence? And the Supreme Court held emphatically that Congress did not change the meaning of on-sale when it enacted the AIA. And then the second point is, it's not only this court's precedence about selling products. The Supreme Court actually cited the Woodland Trust case as one of the Federal Circuit's precedents that have long held that secret sales can invalidate a patent. So while it was not the exact factual situation that was before the Supreme Court in Helsin, the citation to the Woodland Trust case certainly, which is about the secret process in selling the product, I think, is certainly strong evidence that the Supreme Court was aware of this court's rules. OK. Thank you. Thank you. We'll restore your time to three minutes. Thank you, Your Honor. I appreciate it. I'll just make several quick points. One, we're not just relying on claimed invention. It's the language of claimed invention change. And again, I'll just reiterate, how is Congress supposed to reiterate what they mean is what they mean when this court has had an atextual interpretation? Two, we know Congress, 273 and 271G, Congress knows how to capture this conduct in precise terms if it wants to. And it did not add language like that to the on-sale bar provision. And counsel says that 273, that language, and the language was already there. One, that doesn't matter. Congress will look at the statute. I mean, the Supreme Court looks at the statute as a whole to see if Congress knows how to say the thing at issue. And here it does. And significantly, in fact, in 273, that was included in the AIA and modified and reiterated. So it wasn't just already there. Three, the grace period provision makes sense under our reading, under their reading. They're going to agree that this can be a disclosure, Your Honor. But what they're doing is reading disclosure to mean the opposite of what it is. Something that doesn't disclose the patent and invention, the patented process at all is a disclosure. So to make up for their atextual reading of the on-sale bar provision, they're trying to adopt an atextual reading of the grace period. That's not the way you do statutory interpretation. If you construe them both according to the text, they work together. Three, there are only two, maybe three cases that have been cited by the parties here that I think would come out to a different answer under our understanding of this provision. One is D.L. Auld, which was not a text-based decision. And the other is Dippin' Dots, which doesn't analyze the text either. What was the first one, Dauld? D.L. Auld, A-U-L-D, Your Honor. And the second one is Dippin' Dots. And then arguably, Quest Integrity, which was post the passage of the AIA, but interpreting pre-interpretation. But it's unclear from the facts there whether that's really more like a Skaltec situation where we do think the process could be on sale. So this is not like overturning against a wide range of precedent. There's a lot of dicta, but the Supreme Court says dicta cannot make well-established law. Your Honor, to come back to your question about Woodland, Woodland was a public use case, and the holding in Woodland was reversal of invalidity. So that's not this situation. And to the extent the Supreme Court did cite it, as they did, they cited it for a different purpose, not relevant here. We would request that you reverse. OK. Thank you. Thank you. Thank you. We thank the parties for the arguments.